UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:11-cr-00371-FDW-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN STACKS, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

THIS MATTER comes before the Court on Defendant John Stack's Motion for Compassionate Release. (Doc. No. 63). For the reasons that follow, Defendant's motion is DENIED.

**I. BACKGROUND**

Before Defendant committed the federal gun crime that gave rise to the sentence from which he now seeks relief, he received convictions for eight different state offenses in North Carolina. (Doc. No. 45, p. 5–8). Defendant's state offenses included seven different completed or attempted armed robberies—which included robbing a Courtyard Marriot hotel in which he threatened the use of a firearm in the presence of several victims. Id. at 6. Defendant also threatened the use of a firearm when he robbed a Backyard Burgers restaurant. Id. Later, Defendant robbed a Taco Bell restaurant, again threatening the use of a firearm. Id. at 7.

Fewer than four months after Defendant was released from state prison in 2010 and placed on post-release supervision, he committed the federal gun offense that gave rise to the sentence he is currently serving. Id. at 3, 6–7. He illegally possessed a gun, fled from police during a traffic

1

stop, and threw the gun from the car he was driving. Id. at 3–4.

A jury convicted Defendant of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Id. This Court concluded that the Armed Career Criminal Act, 18 U.S.C. § 924(e), which requires a prison sentence of between 15 years and life, applied to Stacks. (Doc. No. 50 at 1).

Defendant was sentenced to a term of imprisonment of 212 months, within the 188–235-month range advised by the United States Sentencing Guidelines. (Doc. No. 57 at 13, 17–18). This Court explained that it considered all of the sentencing factors described in 18 U.S.C. § 3553(a) when imposing its sentence and "highlighted some that are particularly important" in Defendant's case. Id. at 14. The Court, which had presided over Defendant's trial, explained that Defendant appeared to have been "casing the parking lots" of hotels near the interstate "with a firearm," intending "to break into vehicles." Id. at 15. Defendant's "history and characteristics" included a "rash of armed robberies." Id. And Defendant committed his federal offense "only three, four months" after he was released from state custody. Id. This court was "troubled" by his offense in the light of this history and explained that the sentence it imposed had to reflect the "seriousness of the offense." Id. at 14.

This Court explained that it was concerned about the need for "general deterrence" and "particularly concerned about specific deterrence." Id. at 16. The break in Defendant's criminal history between his state and federal crimes "really comes from [his] time in imprisonment and not because" he had "changed" his "ways and decided to be a productive member of society." Id. The Court expressed hope that Defendant could become a productive member of society in the future and encouraged him to take advantage of the rehabilitative opportunities offered by the

2

United States Bureau of Prisons. Id. at 16–17.

The Court explained that a sentence at the low end of the advisory guideline range was not appropriate "based on the nature and circumstances of the offense and the history and characteristics of the defendant." Id. at 17. The Court also explained that a sentence at the high end of the range would not be appropriate either. Id. It explained that the sentence it imposed is "sufficient but not greater than necessary to accomplish the goals of sentencing." Id.

Defendant has been serving his prison sentence at the Federal Correctional Institution in Butner, North Carolina. The Bureau of Prisons reports that Defendant has been subject to disciplinary action for possession of drugs, phone abuse, and assault. Id. at 12–13. In September of 2020, Defendant filed the motion currently before this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). Defendant contends that he suffers from "severe ast[h]ma" and that he contracted "Covid-19 back in April of 2020." (Doc. No. 63). Records supplied by the Bureau of Prisons confirm that Defendant tested positive for COVID-19 on June 1, 2020. (Doc. No. 72). The records report that Stacks has recovered from symptoms of the virus. Id. at 41. And during a September 2020, clinical encounter, Defendant "denie[d] all COVID symptoms." Id. at 17. The records also confirm that Defendant has "a history of childhood asthma." Id. at 38. He reported experiencing chest discomfort, "mostly at night," in June of 2020, while COVID positive. Id. at 39. Defendant was prescribed an Albuterol inhaler, which "seeme[d] to help" his "symptoms." Id. Defendant contends that his asthma condition constitutes an extraordinary and compelling reason warranting compassionate release. (Doc. No. 63).

## II. DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

In Defendant's Motion he discusses the extraordinary and unprecedented challenges the

3

coronavirus poses for the nation and the potential serious issues prisons face. Defendant states that FCI Butner has had 658 inmates contract the coronavirus, in which 16 inmates passed away. (Doc. No. 63). Defednant also claims that he personally contracted the coronavirus in April of 2020, and it has caused his asthma medical condition to worsen. Id.

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)…[1]

In addition to satisfying subsections (i) or (ii), the reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission…." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement with regard to compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy recognizes the following extraordinary and

---

[1] Addressing factors to reasonably assure the appearance of the person as required and the safety of any other person and the community.

compelling reasons:

    (A) Medical Condition of the Defendant –

        (i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory)….

        (ii) The defendant is –

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in a combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1; see also 28 U.S.C. § 994(t) (authorizing the Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction). Rehabilitation, by itself, is not an extraordinary and compelling reason for sentence reduction. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, application note 3.

Defendant has failed to demonstrate the existence of "extraordinary and compelling reasons" for supporting his Motion pursuant to § 3582(c)(1)(A)(i). Defendant does not assert that he has a terminal or serious health condition, or deterioration in physical or mental health due to aging, or family circumstances that would support release under subsections A, B, or C of U.S.S.G. § 1B1.13, application note 1. See (Doc. No. 63). Instead, Defendant claims his asthma condition has already worsened from contracting COVID-19. Id. Defendant makes a general allegation that he is at risk of contracting COVID-19, which is an insufficient basis for compassionate release. *See* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Hood, No. 5:18-CR-00005-KDB, 2020 WL 2091070, at *3 (W.D.N.C. Apr. 30, 2020) ("Without a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility, the Court will not grant a motion for compassionate release based on COVID-19 concerns.").

Nor does Defendant identify any other circumstances that are "extraordinary and compelling" under subsection D of the applicable policy statement other than the COVID-19 pandemic. See id.; see also U.S.S.G. § 1B1.13, application note 1(D). Further, there is no evidence that BOP cannot care for Defendant adequately, especially due to his claim that he has *already* contracted the virus and has recovered while at FCI Butner. Thus, Defendant has failed to make the required showing under § 3582(c)(1)(A)(i).

Even if Defendant qualified for release due to extraordinary and compelling reasons, § 3582(c)(1)(A) requires that this Court consider the factors listed in 18 U.S.C. § 3553(a) before

granting Defendant's motion. These factors, which include "the nature and circumstances of [his] offense," his "history and characteristics," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant," weigh heavily in favor of Defendant's continued imprisonment. 18 U.S.C. § 3553(a).  Defendant's offense of conviction was possession of a firearm by a convicted felon. (Doc. No. 49)  Defendant's criminal history included Robbery with a Dangerous Weapon, and Possession of a Controlled Substance. (Doc. No. 45). Considering Defendant's violent conduct, his extensive criminal history, his disrespect for the law, and the need to protect the public from him as well as the other 3553(a) factors, the Defendant's Motion for Compassionate Release (Doc. No. 63) is DENIED.

### III.   DEFENDANT'S REQUEST FOR HOME CONFINEMENT

Defendant requests that the Court release him to home confinement. The Court does not have the authority to direct BOP to place a defendant in home confinement.  See 18 U.S.C. § 3621(b); Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) ("[D]efendant suggests the CARES Act provides legal authority for the court to order home confinement…. This provision does not authorize the court to order defendant's placement in home confinement.").  A court has no authority to designate a prisoner's place of incarceration. United States v. Voda, 994 F.2d 149, 151-52 (5th Cir. 1993). Because Defendant's request for home confinement alters only

7

the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request; the Court is without jurisdiction to do so. Therefore, Defendant's Motion for Home Confinement (Doc. No. 63) is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release, requesting immediate release and home confinement (Doc. No. 63) is DENIED.

Signed: November 6, 2020

Frank D. Whitney
United States District Judge